### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO

Criminal Case No. 1:19-cr-00369-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JESSE WAYNE HART.

    Defendant.

---

### DEFENDANT'S MOTION FOR VARIANT SENTENCE

---

Defendant Jesse Wayne Hart, through counsel, Richard K. Kornfeld and Abraham V Hutt of Recht Kornfeld, P.C., and pursuant to Title 18 U.S.C. § 3553(a), respectfully moves this Court to impose a variant sentence in this case. In support of said Motion, Defendant states as follows:

**I.    Introduction**

On May 4, 2020, Jesse Hart entered a guilty plea to Count One of the Indictment, charging him with a violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), and 846 (attempt to distribute and possess with intent to distribute 3,4-Methylenedioxymethamphetamine ("MDMA"). The facts underlying the offense are set forth in detail in both the Plea Agreement (Doc. 50) and the Presentence Report ("PSR") (Doc. 54).

Pursuant to the Plea Agreement, the parties estimated the relevant guidelines range with respect to Count One was 37-46 months imprisonment, based upon an estimated offense level of 21 and an estimated criminal history of Category I (Doc. 50, p. 8).

1

The Presentence Report, however, computed the Defendant's criminal history as Category III (Doc. 54 at p. 14).  Based on a total offense level of 21 and a criminal history category of III, the PSR has a guidelines calculation of 46-57 months imprisonment (Doc. 54 at p. 22). The Plea Agreement further reflects the fact that either party may present the Court with additional facts that do not contradict facts to which the parties have stipulated, and which are relevant to the court's guideline computations, or to sentencing in general. (Doc. 50, p. 5).  The Plea Agreement indicates that the Government will recommend a sentence of 37 months, which was what the parties believed, at the time, to be the low end of the applicable guideline range (Id. at p. 4) but which now represents a variant sentence.   For the reasons set forth below, Mr. Hart respectfully avers that the facts and circumstances of this case, combined with his history and personal characteristics, warrant a non-guideline (variant) sentence to 37 months of in-home detention.

As this Court is aware, a "variant" sentence results when "a court enhances or detracts from the recommended [Guidelines] range through application of § 3553(a) factors."  United States v. Atencio, 476 F.3d 1099, 1101 n.1 (10th Cir. 2007), overruled in part on other grounds by Irizarry v. United States, 533 U.S. 708 (2008).  While Mr. Hart and his counsel recognize and respect that the amount of any such variance is within the sole discretion of this Court, they respectfully suggest, for the reasons set forth below, that a variant sentence of 37 months of in-home detention is warranted in this case followed by the appropriate term of supervised release.

**II.   The Applicable Sentencing Standard**

Following United States v. Booker, 125 S.Ct. 738 (2005), a sentencing court must impose a sentence in accordance with Title 18 U.S.C.  § 3553(a), and should no longer presume a sentence calculated pursuant to the Sentencing Guidelines is appropriate.  In the post-Booker world, the correctly calculated Guidelines range is but one factor for the Court to consider in imposing a

2

sentence.  Most significantly, the Court must impose a sentence "sufficient, but not greater than necessary" to comply with the purposes of punishment set forth in Title 18 U.S.C. § 3553(a)(2).  See United States v. Foreman, 436 F.3d 638, 644 n. 1 (6th Cir. 2006) ("the district court's job is not to impose a 'reasonable' sentence [but] to impose 'a sentence sufficient, but not greater than necessary, to comply with the purposes' of section 3553(a)(2)"); United States v. Tucker, 473 F.3d 556, 561 (4th Cir. 2007) (same); United States v. Willis, 479 F.Supp.2d 927, 929 (E.D. Wis. 2007) (explaining that "the so-called parsimony provision…directs the court to impose the minimum term necessary to comply with the statutory goals of sentencing").  Those purposes include the need "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "to afford adequate deterrence to criminal conduct"; and "to protect the public from further crimes of the defendant." Title 18 U.S.C. § 3553(a)(2)(A), (B) and (C).

Defendant is arguing for a variant sentence, which allows a sentencing court not only to consider the so-called Section 3553(a) factors, but also additional factors that may be disfavored by the Sentencing Guidelines, like age and criminal history.  United States v. Huckins, 529 F.3d 1312, 1318-19 (10th Cir. 2008) (citing United States v. Munoz-Nava, 524 F.3d 1137, 1148 & n. 6 (10th Cir. 2008); Gall v. United States, 552 U.S. 38, 128 S.Ct. 586, 602 (2007), and Kimbrough v. United States, 552 U.S. 85, 128 S.Ct. 558, 575 (2007)).

In addition to the presumptive guidelines range, sentencing courts must also consider, pursuant to Title 18 U.S.C. § 3553(a), a number of other factors, including "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the kinds of sentences available"; and the Guidelines. Id. at 3553(a) (1), (3) and (4).  Under this sentencing regime, a court should consider all the relevant sentencing factors, giving no more weight to one factor than to any other factor.  The focus of the post-Booker sentencing scheme, therefore, is a

3

sentence based on the whole person before the court, rather than upon a mechanistic application of oftentimes two-dimensional and limited sentencing factors as embodied and codified in the Guidelines.

In the present case, as set forth more fully below, Jesse Hart avers that certain facts and circumstances warrant a variant sentence, and that the grounds for a variant sentence are well supported. In addition, Mr. Hart respectfully submits that full consideration of all of the factors outlined in Section 3553(a), including the fundamental precept that the sentence be sufficient, but not greater than necessary to serve the purposes of punishment, makes clear that a variant sentence to 37 months of in-home detention is appropriate here.

**III.     Application and Analysis Pursuant to Title 18 U.S.C. 3553.**

**A.     The History and Characteristics of the Defendant**

Pursuant to Title 18 U.S.C. § 3552(a)(1), the Court must consider the Defendant's "history and characteristics" in fashioning an appropriate sentence.

Mr. Hart has been, and remains, contrite, humbled and chastened by virtue of his conduct underlying this case. Appreciating the severity of this crime, Mr. Hart has responded to the case with sincere remorse and a desire to take accountability for his actions. He takes full responsibility for his conduct in this case. Mr. Hart appreciates the seriousness of this offense, and he is prepared to take all necessary measures to ensure that it never occurs again.

One of the reasons that Mr. Hart is so remorseful and self-reflective is that, since his arrest, he has been clear-headed as a result of not abusing drugs. Indeed, as reflected in the PSR, his use of illegal drugs is significant, pervasive, long-term and, but for the intervention of the criminal justice system, constant. (Doc. 54, at paras. 81-89). Mr. Hart's drug use is not raised as an excuse, much less a defense, for his criminal conduct. Instead, it is raised because it directly intersects

with his history of mental health issues (Doc. 54, at paras. 76-80), as well as his unstable and difficult upbringing, which is described in paras. 62-67 of the PSR.

In interacting with Mr. Hart on numerous occasions, undersigned counsel found him to be polite, self-aware, intelligent, remorseful, and hopeful about his future.  He is not only amenable to substance abuse treatment, but welcomes it.  In addition, Mr. Hart welcomes and wants mental health treatment, career guidance, training and any other form of professional help.

Further, Mr. Hart, through counsel, voluntarily turned over a pill press to federal authorities, without any promise of, or indeed credit for, cooperation.  Mr. Hart did this without a request from the prosecution or its agents and has received no benefit for turning over the pill press.  Undersigned counsel respectfully suggests that this decision by Mr. Hart is a concrete reflection not only of his acceptance of responsibility and remorse, but also of his desire to prevent anyone else from being involved in the illegal trade.  Mr. Hart's decision to locate and arrange for the pill press to be turned in has unquestionably prevented the manufacture and distribution of illegal drugs.

As someone who has experienced great difficulties as a young man, Mr. Hart is open to, and welcoming of, the help and assistance of others, particularly professionals who are able to give him the tools and skills to continue to be healthy, clean and sober and succeed in the future.  Mr. Hart wants very badly to succeed in life, and he has ambitions and dreams for his future.  Mr. Hart does not blame his legal predicament on anyone other than himself and takes full accountability for the failings, transgressions and weaknesses that put him in the position to be sentenced. He wants to break the chain of addiction and abuse he suffered as a child so that this case will be his final exit from the criminal justice system.

In addition, Mr. Hart is someone who cares about others. That trait is reflected both by his decision to turn over the pill press and his decision to donate a kidney to his sister. Turning over the pill press was primarily motivated by his fear that someone else would use it to manufacture a dangerous drug that would harm people. While it is certainly his hope that this act will be recognized by this Court and accounted for in his sentence, the act was neither requested by the government nor done with any promise of consideration by the government.

Mr. Hart's donation of his kidney to his sister took place in 2007 and he was in the hospital for a week. He was not the only potential donor, but wanted to be able to make the sacrifice involved to assist his sister. The surgery required and recovery were neither painless nor easy, nor without danger to Mr. Hart's health. The knowledge that he was able to be such a huge part of a life-saving procedure for his sister, however, has been extraordinarily gratifying.

As this Court noted in deciding to grant Mr. Hart's motion to remain on bond pending sentencing, while having only one kidney may not render Mr. Hart more susceptible to catching the Covid-19 virus, it puts him at a much higher risk of death than the rest of us if he does contract it. Much has been written about the propensity for the coronavirus to cause kidney failure. Dr. C. John Sperati of Johns Hopkins has written that some 30% of patients hospitalized with Covid-19 developed acute kidney injury (AKI). *See* https://www.hopkinsmedicine.org/health/conditions-and-diseases/coronavirus/coronavirus-kidney-damage-caused-by-covid19. Acute Kidney Injury (AKI) causes Chronic Kidney Disease (CKD), which can be deadly even in people with two kidneys. *See,* Yes, AKI Truly Leads to CKD,  https://jasn.asnjournals.org/content/23/6/967.long.

6

Exhibit A, attached to Document 47, Mr. Hart's Motion to Allow Defendant to Remain Out of Custody Pending Sentencing, and attached again here as Exhibit A, is a letter from Mr. Hart's Living Donor Advocate. Mr. Hart's nephrologist has explained to him that his elevated kidney laboratory results referenced in Exhibit A, are the consequence of his one kidney doing the work of two and are associated with what can lead to acute kidney injury. That is, the abnormality present in his remaining kidney will put him at grave risk of death if he were to contract Covid-19.

Clearly, prisons are centers of Covid-19 infection and Mr. Hart will be much more likely to contract it in prison than if his sentence does not place him in prison. According to the BOP website, https://www.bop.gov/coronavirus/, as of July 31, 2020, the BOP has 128,696 inmates in BOP-managed institutions. The BOP staff complement is approximately 36,000. There are 3,035 inmates and 500 staff who have confirmed positive test results for Covid-19 nationwide. Currently, 7,429 inmates and 683 staff have recovered. There have been 103 federal inmate deaths and one BOP staff death attributed to COVID-19 disease. BOP facilities in Colorado, including FCI Englewood, have inmates who have tested positive for Covid-19. In addition, as with the rest of the country, the number of Covid-19 cases in BOP facilities is accelerating, according to BOP reports. The primary safety precautions of avoiding indoor gatherings of people and remaining at least 6 feet away from others are of course impossible in prison.

The effects and consequences already suffered by Mr. Hart as a result of his conduct have been significant. Because of his own actions and conduct, his ability to contribute to his household and maintain relationships have suffered. He has been living in limbo since his arrest, and the uncertainty of his situation has been exacerbated by the uncertainties associated with being in the criminal justice system amid the Covid-19 pandemic. During all of that time, Mr. Hart has worked

on his addiction recovery, remaining completely clean and sober and has spent a lot of time and energy seeking the assistance of mental health professionals.

Mr. Hart is committed to being a responsible, law-abiding and productive citizen upon completion of his sentence. He is resolved to take responsibility for his criminal conduct, accept the consequences of his actions, learn from them, and move forward with his life in a positive way that allows him to continue to meaningfully contribute to his family and his community. He is prepared to continue in treatment for his substance abuse and mental health issues.

Mr. Hart has a degree in construction management and experience working in that field before he got sidetracked with drugs. He has arranged to go to work for Quality Electric Colorado, which will get him back into the construction management kind of work for which he is trained. Mr. Hart has not begun that job yet, but instead been working at a bicycle repair store, because he does not know what kind of sentence he will receive. Once he begins at Quality Electric Colorado there will be large projects and many other team members dependent on his work and he does not want to have others in that position if he has to go to prison. While he enjoys the bicycle repair work and is very good at it, it cannot provide the same kind of career and opportunity for growth that he wants for himself.

### B.  The Nature and Circumstances of the Offense

Under Title 18, Section 3553(a)(1), the Court must also analyze the "nature and circumstances" of the convicted offense. Mr. Hart acknowledges that at the time he was arrested he was supporting himself by selling drugs. There is no question but that the drug addiction and intense social anxiety he developed as a result of what he endured as a child are directly related to the nature and circumstances of his crime. That is, he found a way to make money that both kept him from having to deal directly with people (most of this crime was accomplished on line) and

allowed him to self-medicate without resorting to the kinds of crimes associated with supporting a drug habit.  Mr. Hart is extremely remorseful for this conduct and accepts responsibility for the harm he caused.  At the time, his addiction was telling him that he was merely engaging in "alternative medication" but he is now very aware of the damage he was doing to himself and others that were using the drugs. In discussing his actions and conduct with undersigned counsel, Mr. Hart has expressed a very acute awareness of the seriousness of his offense.  Nonetheless, Mr. Hart wishes to communicate to the Court that he is much, much more than his criminal record and his criminal conduct in this case.

### C. The Need for Just Punishment, to Protect the Public, and Promote Respect for the Law

Mr. Hart presents a unique set of circumstances at a unique time.  What just punishment looks like today, in light of the Covid-19 Pandemic, is different than what it looked like five months ago.  In February, the fact that Mr. Hart is a kidney donor who will be at grave risk of death if he contracts coronavirus simply would not have been an issue for sentencing.  Now, counsel submit that it would be unjust not to give it great weight.  Clearly there is an alternative available to the court that would not expose Mr. Hart to the extraordinary danger to him that would result from contracting Covid-19 in prison.  Given his unique medical circumstance, a sentence to in-home detention would provide just punishment without the risk of death posed by the enormously increased chance of contracting Covid-19 in prison.  In another time, and/or for a defendant without Mr. Hart's kidney situation, the Court would almost certainly have viewed such a sentence as not commensurate with the seriousness of the crime or as an unfair departure from the sentence imposed on other offenders.  Counsel submit, however, that the present unique risk to Mr. Hart of irreversible health consequences if he is in prison distinguish him from other

offenders and make a sentence to in-home detention the appropriate one. Indeed, a sentence to prison, carrying with it as it would for Mr. Hart the risk of death, would be greater than necessary to accomplish the goals of sentencing set forth in 18 U.S.C. Sec. 3553(a). Just as the court found that this risk created an extraordinary circumstance that justified Mr. Hart remaining out of custody while awaiting sentencing, it should find that same extraordinary circumstance makes in-home detention a just sentence in this unique time. In combination with the other factors discussed in this motion, including the direct relationship between the crime committed and Mr. Hart's mental health condition, his responses to his apprehension and prosecution and his profound acceptance of responsibility, a sentence to in-home detention will be sufficient, but not greater than necessary, to accomplish the goals of sentencing.

### IV.     Sentencing Requests

In addition to the specific sentence requested herein, Mr. Hart respectfully requests the following:

1) That he be allowed to serve any term of imprisonment on in-home detention.
2) That he not be assessed any fine as he does not have the financial ability to pay a fine.
3) That, should this Court sentence Mr. Hart to the Bureau of Prisons, that it recommend Mr. Hart be designated to an appropriate penal institution in the District of Colorado.
4) That given Mr. Hart's prior history of substance abuse, the Court recommend that he be screened by BOP for the RDAP program.

## V. Conclusion

Jesse Hart is deeply remorseful for the harm he committed.  He is a skilled young man with a long future head of him.  This experience has humbled and chastened him, and he has never blamed anyone other than himself for his actions. More importantly, this case has significantly impacted Mr. Hart in that he is now ready to address his drug abuse and mental health issues head on.  The objectives of Title 18 U.S.C. 3553(a) have been met, and a variant sentence to in-home detention will adequately reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. See, Title 18, U.S.C., 3553(a)(2)(i).  In addition, such a sentence will adequately deter criminal conduct, and protect the public from further crimes of the defendant.  Id. at (a)(2)(ii), (iii).

WHEREFORE, considering all the relevant factors enumerated by Title 18 U.S.C. §3553(a), Mr. Hart respectfully requests that the Court impose a variant sentence to a term of 37 months of in-home detention.

Dated this 31st day of July, 2020.

Respectfully submitted,

**RECHT KORNFELD, P.C.**

*s/ Richard K. Kornfeld*
Richard K. Kornfeld
Abraham V Hutt
Attorneys for Defendant Jesse Hart
1600 Stout Street, Suite 1400
Denver, Colorado 80202
(303) 573-1900
Fax: (303) 446-9400
rick@rklawpc.com

**CERTIFICATE OF SERVICE**

       I hereby certify that on this 31st day of July, 2020, I electronically filed the foregoing **Defendant's Motion for Variant Sentence** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

*s/ Erin Holweger*
Erin Holweger